Neel, J.
The defendants move to vacate the nisi dismissal entered on September 9,1997, and the Agreement for Settlement/Stipulation of Dismissal (“Agreement”) subsequently filed by the parties on September 18, 1997. For the following reasons, the defendants’ motion is allowed in part and denied in part.
BACKGROUND
For purposes of this motion, and on the basis of the affidavits and other materials submitted, the Court finds as follows. On April 11, 1992, plaintiff John J. Sullivan (“Sullivan") sustained severe burns when scalding water flowed from the pipes into the bathtub where he was bathing. Sullivan’s burns subsequently became infected, necessitating an amputation of his right leg. Sullivan filed this action in 1993, alleging that the defendants’ negligence caused his injuries.
Unbeknownst to the defendants, Sullivan died on May 15, 1997. Sullivan’s counsel Richard J. Regan, Esq., learned of Sullivan’s death on May 16, 1997.
Beginning August 6,1997, Regan telephoned counsel for the defendants and told them that he wished to settle the case prior to the scheduled trial date of September 3, 1997. Counsel for defendant Cranney Electric Company states under oath that on or about August 27, 1997, “I specifically asked Mr. Regan whether the health of John J. Sullivan was a factor in his decision to attempt to settle the case prior to the September 3, 1997 trial date and was told that it was not.” (Affidavit of Ralph C. Sullivan.) Attorney Sullivan also states that, prior to a September 5, 1997 status conference on settlement negotiations, “I specifically asked Mr. Regan whether his client was alive and he told me that he was.”
Stacey A. Savage, Esq., attorney for defendant Mel-rose Place Condominium Trust and H.H. Gilbert Management Corporation, states under oath that, on September 2, 1997, she asked Regan whether the plaintiff was “available to testify,” and that Regan responded that he “hopes” the plaintiff would be “around to testify.” (Affidavit of Stacey A. Savage.) Savage also states that she asked Regan whether the plaintiff was in the hospital, and that he replied, “No, he’s not in the hospital.”
*444 Nicholas J. DeNitto, attorney for defendant Massachusetts Electric Company, states under oath that on September 3, 1997, the scheduled trial date, counsel reported the status of the case to the Court; that at that time Sullivan’s counsel did not report that Sullivan had died; that Regan informed DeNitto that, pursuant to the Agreement, he would get a release signed by Sullivan; that on September 17, 1997, DeNitto telephoned Regan to inquire whether he knew that Sullivan was deceased; that Regan responded that Sullivan was still alive, and that he would get back to DeNitto regarding whether Sullivan was deceased.
Attorney Regan, in his response to the motion and the above sworn statements of counsel, also filed an affidavit, which is reproduced below in its entirety:
1. On or about May 16, 1997,1 learned of the death of the Plaintiff, John J. Sullivan.
2. At all times after the plaintiffs death I acted upon the express authority of the Heirs at Law and/or the Special Administratrix of the plaintiffs estate.
3. At no time did I confirm or deny the plaintiffs death during settlement negotiations with defense counsel.
Attorney Regan also states, in Plaintiffs Opposition to Defendant’s Motion to Vacate Agreement for Settlement/Stipulation of Dismissal, that “at no time did plaintiffs counsel ‘confirm or deny’ the Plaintiffs death . . . Plaintiffs counsel only attempted to avoid the subject or change the subject wherever it was raised.” Regan thus directly denies only that he told attorneys Sullivan (on September 5, 1997) and DeNitto (on September 17, 1997) that plaintiff Sullivan was alive; Regan does not deny, nor does he in any other manner address directly,[2] any of defense counsel’s other sworn statements regarding what Regan said to them during settlement negotiations.
Those negotiations resulted in a settlement under which the defendants are to pay a combined total of $370,000 to Sullivan.
On September 9, 1997, the Court entered a nisi dismissal, ordering that an agreement or stipulation be filed by October 9,1997 as to any and all pending claims. On September 18, 1997, counsel for all parties filed the Agreement which setforth the conditions of compromise. On September 19, 1997, Regan filed a Suggestion of Death. Defense counsel then filed this motion to vacate both the nisi dismissal and the Agreement.
DISCUSSION
To the extent that the defendants request relief from a final judgment or order of the Court, the Court will treat their motion as a motion pursuant to Mass.R.Civ.P. 60(b).[3]
Defendants allege that attorney Regan misrepresented Sullivan’s condition and thereby violated a duty to “speak honestly and divulge all the material facts.” Mass.R.Civ.P. 60(b)(3) provides that the Court may relieve a party from a final order for fraud, misrepresentation, or “other misconduct” of an adverse party. In such a case, “the moving party has the burden of proving by clear and convincing evidence that the alleged fraud or misrepresentation exists and that he is entitled to relief.” Reporters’ Notes to Mass.R.Civ.P. 60 (1973).
For purposes of defendants’ Rule 60(b) motion, the Court concludes that defendants have demonstrated by clear and convincing evidence that attorney Regan, in response to direct questions from defense counsel, did not simply decline to answer; rather, he gave answers which, as he knew or should have known, misled defendants as to his client’s condition and ability to appear at trial. Moreover, the Court is persuaded that the defendants relied on Regan’s statements in deciding whether to settle and for how much, and that their reliance was foreseeable. See Slaney v. Westwood Auto, Inc., 366 Mass. 688, 703 (1975).
Whether or not the conduct of attorney Regan constitutes fraud, the Court is satisfied that it constitutes “misrepresentation or other misconduct of an adverse party” under Rifle 60(b). “Given the liberal purpose of Rule 60(b), ‘misrepresentation’ in this context should be taken reasonably broadly . . . [and] ‘other misconduct’ probably means other acts of a similarly deceptive nature.” Smith & Zobel, Rules Practice, §60.10. In this case, putting it plainly, attorney Regan was hiding the ball, even after direct and repeated inquiries by his fellow counsel. He had no duty to respond to those inquiries, but he did have a duty not to make a response that was misleading. The Court will not reward such conduct by enforcing the dismissal that resulted.
The Court will therefore vacate the dismissal nisi, and will order that the entry of the Agreement on the docket be null and void. Because the context of this decision is a Rule 60(b) motion, the Court does not address the enforceability of the Agreement.
In view of the foregoing, the Court does not address the other grounds of defendants’ motion.
ORDER
For the foregoing reasons, it is therefore ORDERED that the defendants’ motion to vacate the nisi dismissal is ALLOWED, and that the September 18, 1997 entry on the docket of the Agreement for Settlement/ Stipulation of Dismissal shall be deemed a nullity and shall have no effect. The motion to vacate the Agreement among the parties is DENIED WITHOUT PREJUDICE, subject to a determination on the merits of the Agreement pursuant to an appropriate proceeding.

Attorney Regan does acknowledge in Plaintiffs Opposition that defense counsel “have alleged by affidavit that they inquired of plaintiffs counsel about the ‘plaintiffs health’ ‘availability to testify,’ and ‘reasons for settling . ..”’ While he argues that the affidavits “falsely insinuate a duty which in fact, does not exist,” Regan does not state (except as noted) that the affidavits themselves are false.

Plaintiffs opposition to the motion also treats the defendant’s motion to vacate as a motion pursuant to Rule 60(b).

 H.H. Gilbert Management Corporation, Melrose Place Condominium Trust.